1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT DANA,

11            Petitioner,                  No. CIV S-05-1480 LKK DAD P

12        vs.

13   TERESA A. SCHWARTZ, Warden,

14            Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner, proceeding pro se, with an application for writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  On February 7, 1977, petitioner was convicted in

18   the Sutter County Superior Court of two counts of first degree murder (California Penal Code §

19   187) with the use of a firearm and was sentenced to state prison for life with possibility of parole

20   after seven years.  (Pet. at 2; Answer at 1.)  In the petition now pending before this court,

21   petitioner challenges the March 10, 2004 decision of the California Board of Prison Terms

22   (hereinafter, the "Board")[1] finding him unsuitable for parole.  (Pet. at 3-6.)  Upon consideration

23   of the record and the applicable law, the undersigned will recommend that petitioner's

24   application for habeas corpus relief be denied.

25   _____
26            [1] California has since replaced the Board of Prison Terms with the Board of Parole
     Hearings.  See Cal. Penal Code § 5075(a).

                                        1

## PROCEDURAL BACKGROUND

On March 10, 2004, petitioner appeared before the Board for his eighth subsequent parole consideration hearing and was found unsuitable for parole.  (Pet., Ex. B.)  Petitioner had previously received parole consideration hearings in 1982, 1983, 1986, 1989, 1994, 1995, 1997, and 2001.  (Id.)

On July 26, 2004, petitioner challenged the Board's 2004 decision through a habeas petition filed in the Sutter County Superior Court, raising the same issues asserted in the instant petition.  (Pet. at 6-10; Answer at 2-3.)  On August 5, 2004, the Superior Court issued a reasoned opinion affirming the Board's decision and denying the petition.  (Answer, Ex. 3.)

On December 2, 2004, petitioner filed an application for writ of habeas corpus to the California Court of Appeal for the Third Appellate District.  (Pet. at 7.)  On February 17, 2005, the appellate court summarily denied the petition.  (Answer, Ex. 4.)

On February 15, 2005, petitioner sought review of the denial to the California Supreme Court and his petition for review was summarily denied on February 25, 2005.  (Pet. at 7; Answer, Ex. 5.)

Petitioner filed the instant application for a federal writ of habeas corpus on July 17, 2005.  (Docket No. 1.)[2]

/////

/////

---

[2] On July 27, 2009, petitioner filed a motion for judgment on the pleadings.  Therein, he asserts that he has recently been diagnosed with cancer "in the bone" and there is no reason to stay his case pending the outcome of the en banc hearing in Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008).  (Docket No. 34 at 2.)  Petitioner's recent diagnosis has no bearing on whether there was "some evidence" sufficient to show that he was unsuitable for parole in 2004 and this action has not been stayed.  Because the undersigned herein recommends that petitioner's application for a writ of habeas corpus be denied, petitioner's motion for judgment on the pleadings will be denied as moot.  Petitioner is advised that California Penal Code § 1170(e) authorizes the Director of Corrections or the Board to recommend to the state court that a prisoner's sentence be recalled based upon a prisoner's medical condition and that the sentencing court has the discretion to do so under specified circumstances.

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief::

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

3

federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  Here, the last reasoned state court decision is the August 5, 2004 denial of habeas corpus relief by the Sutter County Superior Court.  Therefore, this court will consider whether that decision was erroneous under the standard of § 2254(d).

## II.  Petitioner's Claims

Petitioner alleges that the Board's March 10, 2004 denial of parole violated his right to due process under the United States Constitution.  (Pet. at 10.)  Additionally, petitioner alleges that the Board's "application of the Determinate Sentence Law...violat[ed] the prohibitions against Ex Post Facto laws insofar as the application has deprived him of the substantive benefits of the former Indeterminate Sentence Law and Board regulations and practices at the time of his offense."  (Id.)[3]

/////

---

[3]  Petitioner also alleges in conclusory fashion that the Board's decision to deny him parole violates his right to equal protection of the law under the Fourteenth Amendment.  (Pet. at 2, 8, 10, 28-29; P. & A. in Supp. of Pet. at 15, 18, 41.)  A habeas petitioner raising an equal protection claim in the parole context must demonstrate that he was treated differently from other similarly situated prisoners and that the Board lacked a rational basis for its decision to deny parole.  See McGinnis v. Royster, 410 U.S. 263, 269-270 (1973) (reviewing differences in release dates under rational basis test and balancing the state's efforts to ensure that prisoners are sufficiently prepared for release to protect public safety with the prisoner's interest in release); McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991); see also Connor v. Estelle, 981 F.2d 1032, 1034-1035 (9th Cir. 1992) (finding that the application of the determinate sentencing law guidelines to a petitioner who had been sentenced under California's indeterminate sentencing law did not violate equal protection).  Petitioner has failed to cite any instances in which he was treated differently from other similarly situated prisoners nor has he established that the Board lacked a rational basis for denying his parole.  Accordingly, to the extent petitioner alleges that his right to equal protection under the law has been violated, his claim should be rejected.

1     A.  <u>Board Decision & Due Process</u>

2       1.  <u>Due Process in the California Parole Context</u>

3     The Due Process Clause of the Fourteenth Amendment prohibits state action that

4 deprives a person of life, liberty, or property without due process of law.  One alleging a due

5 process violation must first demonstrate that he was deprived of a liberty or property interest

6 protected by the Due Process Clause and then show that the procedures attendant upon the

7 deprivation were not constitutionally sufficient.  <u>Ky. Dep't of Corr. v. Thompson</u>, 490 U.S. 454,

8 459-60 (1989); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002).

9     A protected liberty interest may arise from either the Due Process Clause of the

10 United States Constitution or state laws.  <u>Bd. of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987).  The

11 United States Constitution does not, of its own force, create a protected liberty interest in a parole

12 date, even one that has been set.  <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981).  However, "a

13 state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release

14 will be granted' when or unless certain designated findings are made, and thereby gives rise to a

15 constitutional liberty interest."  <u>McQuillion</u>, 306 F.3d at 901 (quoting <u>Greenholtz v. Inmates of</u>

16 <u>Neb. Penal</u>, 442 U.S. 1, 12 (1979)).

17     California's parole scheme gives rise to a cognizable liberty interest in release on

18 parole, even for prisoners who have not already been granted a parole date.  <u>Sass v. Cal. Bd. of</u>

19 <u>Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006); <u>Biggs v. Terhune</u>, 334 F.3d 910, 914 (9th Cir.

20 2003); <u>McQuillion</u>, 306 F.3d at 903; <u>see</u> <u>also</u> <u>In re Lawrence</u>, 44  Cal. 4th 1181, 1204, 1210, 1221

21 (2008).  Accordingly, this court must examine whether California provided the constitutionally-

22 required procedural safeguards when depriving petitioner of a protected liberty interest and, if not,

23 whether the Sutter County Superior Court's conclusion that it did was contrary to or an

24 unreasonable application of clearly established federal law.

25     It is clearly established federal law that a parole board's decision deprives a

26 prisoner of due process with respect to his constitutionally protected liberty interest in a parole

1    release date if the board's decision is not supported by "some evidence in the record," or is

2    "otherwise arbitrary." Superintendent v. Hill, 472 U.S. 445, 457 (1985); Irons v. Carey, 505 F.3d

3    846, 851 (9th Cir. 2007); Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915. "The 'some evidence'

4    standard is minimally stringent," and a decision will be upheld if there is any evidence in the

5    record that could support the conclusion reached by the factfinder. Powell v. Gomez, 33 F.3d 39,

6    40 (9th Cir. 1994) (quoting Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). See also

7    Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying

8    the board's decision must have some indicia of reliability." Jancsek v. Or. Bd. of Parole, 833 F.2d

9    1389, 1390 (9th Cir. 1987). See also Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992).

10    Determining whether the "some evidence" standard is satisfied does not require examination of

11    the entire record, independent assessment of the credibility of witnesses, or the weighing of

12    evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in

13    the record that could support the conclusion reached. Id.

14        When assessing whether a state parole board's suitability decision was supported

15    by "some evidence," the analysis "is framed by the statutes and regulations governing parole

16    suitability determinations in the relevant state." Irons, 505 F.3d at 851. Therefore, this court

17    must:

18        look to California law to determine the findings that are necessary
        to deem a prisoner unsuitable for parole, and then must review the
19        record in order to determine whether the state court decision
        holding that these findings were supported by "some evidence" in
20        [petitioner's] case constituted an unreasonable application of the
        "some evidence" principle articulated in Hill.

21

22    Id.

23        Under California law, prisoners serving indeterminate prison sentences "may serve

24    up to life in prison, but they become eligible for parole consideration after serving minimum terms

25    of confinement." In re Dannenberg, 34 Cal. 4th 1061, 1078 (2005). The Board normally

26    considers setting a parole release date one year prior to the inmate's minimum eligible parole

1 release date, and does so "in a manner that will provide uniform terms for offenses of similar

2 gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202

3 (citing Cal. Penal Code § 3041(a)). A release date must be set "unless [the Board] determines that

4 the gravity of the current convicted offense or offenses, or the timing and gravity of current or past

5 convicted offense or offenses, is such that consideration of the public safety requires a more

6 lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed [.]" Cal.

7 Penal Code § 3041(b).

8          In order to carry out the mandate of California Penal Code § 3041, the Board must

9 determine "whether the inmate poses 'an unreasonable risk of danger to society if released from

10 prison,' and thus whether he or she is suitable for parole." In re Lawrence, 44 Cal. 4th at 1202

11 (citing Cal. Code Regs., tit. 15, § 2281(a)). In doing so, the Board must consider all relevant,

12 reliable information available regarding

13
14
15
16
17
      the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

18 Cal. Code Regs., tit. 15, § 2281(b).

19          The regulation identifies circumstances that tend to show suitability or unsuitability

20 for release. Id. § 2281(c) & (d). Under the regulation, the following circumstances tend to show

21 that a prisoner is suitable for release: (1) the prisoner has no juvenile record of assaulting others or

22 committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced

23 reasonably stable relationships with others; (3) the prisoner has performed acts that tend to

24 indicate the presence of remorse or has given indications that he understands the nature and

25 magnitude of his offense; (4) the prisoner committed his crime as the result of significant stress in

26 his life; (5) the prisoner's criminal behavior resulted from having been victimized by battered

7

women syndrome; (6) the prisoner lacks a significant history of violent crime; (7) the prisoner's present age reduces the probability of recidivism; (8) the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) institutional activities indicate an enhanced ability to function within the law upon release.  Cal. Code Regs., tit. 15, § 2281(d).

The following circumstances tend to indicate unsuitability for release: (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; (2) the prisoner had a previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner's crime was a sadistic sexual offense; (5) the prisoner had a lengthy history of severe mental problems related to the offense; and (6) the prisoner has engaged in serious misconduct in prison.  Cal. Code Regs., tit. 15, § 2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense.  Id. § 2281(c)(1)(A) - (E).

In California, the overriding concern in determining parole suitability is public safety and the focus therefore is on the inmate's current dangerousness.  In re Dannenberg, 34 Cal. 4th at 1086; In re Lawrence, 44 Cal. 4th at 1205.  In this regard, the California Supreme Court recently stated:

> [T]he Penal Code and corresponding regulations establish that the fundamental consideration in parole decisions is public safety [and] the core determination of "public safety" . . . involves an assessment of an inmate's *current* dangerousness. . . . [A] parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional

1   antisocial acts." These factors are designed to guide an assessment
    of the inmate's threat to society, *if released*, and hence could not
2   logically relate to anything but the threat *currently* posed by the
    inmate.
3

4   In re Lawrence, 44 Cal. 4th at 1205-06 (internal citations omitted)(emphasis in original).

5         Accordingly, when California courts review a decision by the Board to deny parole

6   to an inmate, "the relevant inquiry is whether some evidence supports the decision of the Board or

7   the Governor that the inmate constitutes a current threat to public safety, and not merely whether

8   some evidence confirms the existence of certain factual findings."  In re Lawrence. at 1212 (citing

9   In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071; In re Lee, 143 Cal.

10  App. 4th 1400, 1408 (2006)).

11        In recent years the Ninth Circuit Court of Appeals has concluded that, given the

12  liberty interest that California prisoners have in release on parole, a continued reliance upon an

13  unchanging factor to support a finding of unsuitability for parole may, over time, constitute a

14  violation of due process.  The court has addressed the issue in three significant cases, each of

15  which will be discussed below.

16        First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued

17  reliance on an unchanging factor to deny parole, such as the circumstances of the offense, could at

18  some point result in a due process violation.[4]  While the court in Biggs rejected several of the

19  reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld

20  three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was

21  carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3)

22  petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs

23  cautioned that continued reliance solely upon the gravity of the offense of conviction and

24  /////

25  _____

26     [4] That holding has been acknowledged as representing the law of the circuit.  Irons, 505 F.3d at 853; Sass, 461 F.3d at 1129.

9

1  petitioner's conduct prior to committing that offense in denying parole could, at some point,

2  violate due process.  In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.  Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

8  Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

9  unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

10  contrary to the rehabilitative goals espoused by the prison system and could result in a due process

11  violation."  Biggs, 334 F.3d.at 917.

12          In Sass, the Board found the petitioner unsuitable for parole at his third suitability

13  hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

14  461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on these

15  unchanging factors violated due process.  The court disagreed, concluding that these factors

16  amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

17  provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." Biggs, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed.  Cf. id.  The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision.  Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

26  (Id.)

1          In Irons, the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

2    stating as follows:

3               Because the murder Sass committed was less callous and cruel than
                the one committed by Irons, and because Sass was likewise denied
4               parole in spite of exemplary conduct in prison and evidence of
                rehabilitation, our decision in Sass precludes us from accepting
5               Irons' due process argument or otherwise affirming the district
                court's grant of relief.

6
                We note that in all the cases in which we have held that a parole
7               board's decision to deem a prisoner unsuitable for parole solely on
                the basis of his commitment offense comports with due process, the
8               decision was made before the inmate had served the minimum
                number of years required by his sentence.  Specifically, in Biggs,
9               Sass, and here, the petitioners had not served the minimum number
                of years to which they had been sentenced at the time of the
10              challenged parole denial by the Board.  Biggs, 334 F.3d at 912;
                Sass, 461 F.3d at 1125.  All we held in those cases and all we hold
11              today, therefore, is that, given the particular circumstances of the
                offenses in these cases, due process was not violated when these
12              prisoners were deemed unsuitable for parole prior to the expiration
                of their minimum terms.

13
                Furthermore, we note that in Sass and in the case before us there
14              was substantial evidence in the record demonstrating rehabilitation.
                In both cases, the California Board of Prison Terms appeared to
15              give little or no weight to this evidence in reaching its conclusion
                that Sass and Irons presently constituted a danger to society and thus
16              were unsuitable for parole.  We hope that the Board will come to
                recognize that in some cases, indefinite detention based solely on an
17              inmate's commitment offense, regardless of the extent of his
                rehabilitation, will at some point violate due process, given the
18              liberty interest in parole that flows from the relevant California
                statutes.  Biggs, 334 F.3d at 917.

19

20   Irons, 505 F.3d at 853-54.[5]

21   _____

22          [5] The California Supreme Court has also acknowledged that the aggravated nature of the
     commitment offense, over time, may fail to provide some evidence that the inmate remains a
23   current threat to public safety.  In re Lawrence, 44 Cal. 4th at 1218-20 & n.20.  Additionally, a
     recent panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008),
24   determined that under the "unusual circumstances" of that case the unchanging factor of the
     gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the
25   governor's decision to reverse a parole grant on the basis that the petitioner would pose a
     continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to rehear
26   that case en banc.  Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008).  Therefore, the panel
     decision in Hayward is no longer citable precedent.

2. <u>Petitioner's State Proceedings</u>

On March 10, 2004, the Board found petitioner unsuitable for parole and concluded that he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Answer, Ex. 2 at 67.) The Board stated that its conclusion was based on the following circumstances: (1) petitioner's "offense was carried out in an especially cruel and callous manner"; (2) "multiple victims were attacked and killed in the same incident, and the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and life"; (3) petitioner's 2002 psychiatric report stated that "his risk for violence or harmful behavior is exacerbated by the use/abuse of drugs or alcohol" and that petitioner has only a "superficial appreciation of the lifelong nature of his substance abuse program, and currently sees himself as no longer a risk for substance abuse . . . he will remain a higher risk for relapse than will people in the general population"; and (4) petitioner "lacks parole plans . . . for California." (<u>Id</u>. at 67-70.) Additionally, the Board noted opposition to petitioner's release on parole from the District Attorney's Office of Sutter County and the Sutter County Sheriff's Department. (Answer, Ex. 2 at 67.)

On August 5, 2004, the Board's decision was reviewed by the Sutter County Superior Court pursuant to petitioner's state petition for habeas corpus relief. That court upheld the Board's decision, stating:

> The Court does not agree with the interpretation by the petitioner as to the adequacy of [the Board's] decision. Presiding Commissioner Risen states the reasons why the board found the petitioner not suitable for parole. Commissioner Risen indicates that the petitioner continues to be unpredictable and a threat to others.
>
> ***
>
> The Court denies the request to issue an order finding that the Board of Prison Terms' denial of parole was not supported by any relevant or material evidence. The Court denies the request to direct petitioner's release on parole. The petition for Writ of Habeas corpus is denied.

(Answer, Ex. 3.)

12

3. <u>Analysis</u>

The last reasoned decision rejecting the claim presented in the pending petition is that of the Sutter County Superior Court affirming the Board's August 5, 2004, denial of parole. (<u>Id</u>.)  For the reasons explained below, the undersigned concludes that the Superior Court's decision that "some evidence" supported the Board's finding was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

The undersigned finds that the Board's decision that petitioner was unsuitable for parole and that his release would unreasonably endanger public safety was supported by "some evidence" that bore "indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.  In this regard, a review of the record reflects that the Board relied in large part on the circumstances of petitioner's offense of conviction, psychiatric reports indicating that he has a higher risk than normal for substance abuse relapse, and his lack of parole plans for California.[6]  Petitioner challenges the Board's reliance on the latter factor, noting that a letter of support from his wife stated that while she and petitioner desire to live in Nevada and "advising that she is willing to return to Sutter County should the Board parole [petitioner] to that area."  (Pet. at 21; Ex. G.)  However, the Board noted that "[petitioner] lacks realistic parole plans in that he does not have a residential plan for California."  (Answer, Ex. 2 at 69.)  Petitioner's failure to make realistic plans for release, coupled with the circumstances of his conviction and psychiatric reports indicating his high risk for

---

[6]  While not relevant to whether "some evidence" existed of petitioner's current dangerousness at the time of his 2004 parole suitability hearing, it is noteworthy that petitioner has submitted a Psychological Risk Assessment, conducted on February 13, 2009 at the California Medical Facility, which confirms that the unsuitability factors set forth in the Board's 2004 findings still persist five years later.  (Doc. No. 34, App. 3.)  That assessment concludes that petitioner continues to have no viable parole plans for California and that "he has not integrated the 12-Step program into his daily routine in a credible manner as a means of preventing future difficulties with intoxicating substances in the community.  Exposure to alcohol is a potential destabilizing influence on the inmate." (<u>Id</u>. at 4, 9.)  While the psychologist concluded that petitioner's risk of violence was low, he also suggested petitioner could decrease his risk of violence by "developing a comprehensive substance abuse relapse prevention plan; verifying all parole plans; examining and coming to terms with the causative factors of the life crime, as well as developing positive strategies to avoid those liabilities and behaviors in the future." (<u>Id</u>. at 10.)

13

1   substance abuse relapse, constitutes "some evidence" of his current dangerousness as of the 2004

2   hearing.  Such evidence meets the minimally stringent test set forth in <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>.

3   Therefore, the Sutter County Superior Court's decision is not contrary to clearly established

4   federal law.  <u>See</u> 28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to relief on his claim

5   that the Board's failure to find him suitable for parole at the March 10, 2004, hearing violated his

6   right to due process.  <u>Sass</u>, 461 F.3d at 1129; <u>Irons</u>, 505 F.3d at 664-65.

7          B.  <u>Ex Post Facto and ISL/DSL</u>

8                 Petitioner also alleges that the Board's "application of the Determinate Sentence

9   Law . . . violat[ed] the prohibitions against Ex Post Facto laws insofar as the application has

10  deprived him of the substantive benefits of the former Indeterminate Sentence Law and Board

11  regulations and practices at the time of his offense."  (Pet. at 10.)[7]

12                The States are forbidden from passing any ex post facto law.  U.S. Const. Art. I,

13  § 10.  The Supreme Court has held that the Ex Post Facto Clause is aimed at laws that

14  "retroactively alter the definition of crimes or increase the punishment for criminal acts."  <u>Collins</u>

15  <u>v. Youngblood</u>, 497 U.S. 37, 43 (1990).  The Ninth Circuit has held that a California prisoner is

16  not disadvantaged when his suitability for parole is considered under the amended guidelines

17  because "the DSL guidelines require consideration of the same criteria as did the ISL."  <u>Connor v.</u>

18  <u>Estelle</u>, 981 F.2d 1032, 1033-1034 (9th Cir. 1992).  Under state law, a life prisoner must first be

19  found suitable for parole before a parole date is set.  <u>See</u> <u>In re Stanworth</u>, 33 Cal. 3d 176, 183

20  (1982).  The ISL and DSL both required that the prisoner be found suitable for parole before a

21  parole date could be set.  (<u>Id</u>.)

22                Here, petitioner was not found suitable for parole by the Board.  (Answer, Ex. 2.)

23  Therefore, no parole date would have been set under either the ISL or the DSL.  Consequently, the

24

25         [7]  The Sutter County Superior Court did not address petitioner's ex post facto claim and it
26  is therefore subject to de novo review by this court.  <u>See</u> <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056
    (9th Cir. 2003); <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

1   Ex Post Facto Clause was not violated because the law did not change to the detriment of the

2   petitioner.  <u>Connor</u>, 981 F.2d at 1034.  Accordingly, petitioner's ex post facto claim is without

3   merit and should be rejected.

4                                        CONCLUSION

5              Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

6   writ of habeas corpus be denied.

7              These findings and recommendations are submitted to the United States District

8   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

9   days after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within ten days after service of the objections.  The parties are advised

13  that failure to file objections within the specified time may waive the right to appeal the District

14  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

15  DATED: August 17, 2009.

16

17  _____

18  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

19  DAD:3
    dana1480.hc2

20

21

22

23

24

25

26